THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERT FOSTER, Defendant-Appellant.

First District (1st Division)   Nos. 1—97—1556, 1—97—2117 cons.

Opinion filed November 22, 1999.

2

Michael J. Pelletier and Deborah J. Israel, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Alan J. Spellberg, and Jeremy S. Brenman, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Robert Foster was charged with first degree murder, three counts of attempted first degree murder and three counts of aggravated discharge of a firearm. Codefendants Donald Toney and Frederick Luckett were also charged with these crimes but are not involved in this appeal. Separate juries resolved the charges against Luckett and Toney.

The jury found Foster guilty of second degree murder of Phillip Matthews and guilty of two counts of attempted first degree murder and two counts of aggravated discharge of a firearm of Bobby Roberson and Antoine Harris. The jury found Foster not guilty of felony murder and not guilty of attempted first degree murder and aggravated discharge of a firearm of Terrance Harris. The trial court originally sentenced Foster in total to an 18-year sentence with concurrent terms of 18, 17, 17, 10 and 10 years in prison, respectively, for the convictions of second degree murder, two counts of attempted murder and two counts of aggravated discharge of a firearm. After Foster filed

his notice of appeal, the State filed a motion to reconsider Foster's sentence; the court granted the State's motion to reconsider and resentenced Foster to a 35-year sentence in total with an 18-year term for second degree murder, to run consecutively to concurrent terms of 17, 17, 10 and 10 years, respectively, for the attempted first degree murder and aggravated discharge of a firearm convictions.

Foster on appeal contends (1) the trial court should have suppressed his statements and identification based on a warrantless arrest made without probable cause; (2) the State's closing arguments denied him a fair trial; and (3) the trial court erred by resentencing him. For the reasons that follow, we affirm the trial court's ruling on the motion to suppress, and we affirm Foster's convictions.

In the context of the resentencing issue, we address what impact the State's motion to reconsider sentence has on jurisdiction after defendant has filed a notice of appeal. Whether upon motion by the State to reconsider sentence a trial court may reinstate its jurisdiction in order to resentence defendant after a notice of appeal has been filed by the defendant is an issue of first impression. For the reasons that follow, we find the order reconsidering defendant's sentence and resentencing defendant to consecutive sentences was entered by the trial court without jurisdiction and is vacated, while defendant's original sentence was valid and is reinstated.

## FACTS

At approximately 7 p.m. on the evening of October 10, 1995, 9 or 10 members of the Four Corner Hustlers street gang, including Antoine Harris and his brother Terrance Harris, observed a car drive east of Halsted on 123rd Street. Antoine recognized the driver of the car as Toney. Toney and his passengers, Foster and Luckett, were members of the Gangster Disciples street gang. A confrontation occurred during which at some point threats were yelled, Antoine threw a bottle at Toney's vehicle and shots were fired. Foster and Luckett were armed with a 9 millimeter handgun and a rifle. They shot at various individuals. Phillip Matthews died from gunshot wounds. Bobby Roberson, Antoine and Terrance were not injured. Antoine knew codefendant Toney and gave Chicago police officers information that led them to 123rd and Carpenter, where Toney lived and where the officers eventually discovered Toney's vehicle, which matched the description of the vehicle involved in the shooting. A neighbor then told the officers that the vehicle belonged to the boys from 12320 South Carpenter.

As Officer Kane approached 12320 South Carpenter, he saw an individual who matched the description of one of the offenders and arrested him. This individual was later identified as Luckett. Luckett

and Toney were half-brothers. Officer Kane told Luckett's mother that he noticed two individuals run into the house at 12320 South Carpenter. She went into the house and returned first with Foster, and then with Toney, and both were arrested. Police officers accompanied by Luckett later recovered the two guns used by Foster and Luckett during the confrontation. A forensic expert who examined 15 fired cartridge casings concluded the casings recovered from the scene were consistent with the two recovered weapons; however, three fired bullets, including one .38-caliber bullet from the body of Phillip Matthews, could not have been fired from the two recovered weapons.

Antoine identified Foster and his codefendants in a lineup. Foster, to the police, first denied knowing about the shooting, but after being confronted with the recovered weapons, admitted his involvement. At trial, Foster denied any plan to kill rival gang members and maintained he fired his weapon in self-defense. He testified that he, Luckett, and Toney were shot at as they drove through Four Corner Hustler territory, and he exited the vehicle and returned the fire. He further testified that he and Luckett were chased and shot at, and that because he feared for his life, he continued to fire back. On cross-examination, he stated he told the police that he was fired at but he did not tell this to the assistant State's Attorney or include it in his written statement.

## I. ANALYSIS

### A. Probable Cause to Arrest

■ Defendant Foster contends that his statements and identification should have been suppressed as the fruit of an illegal arrest and that the State's closing argument denied him a fair trial. Defendant is not challenging the findings of fact made by the trial court, and, therefore, whether probable cause exists is a legal question subject to *de novo* review. *Ornelas v. United States*, 517 U.S. 690, 698-99, 134 L. Ed. 2d 911, 920-21, 116 S. Ct. 1657, 1662-63 (1996).

■ An arrest without a warrant must be supported by probable cause. U.S. Const., amend. IV; *People v. Robinson*, 167 Ill. 2d 397, 405 (1995). "Probable cause to arrest exists where the totality of the circumstances known to police officers at the time of arrest are sufficient to warrant a reasonably prudent person to believe that the suspect has committed a crime." *People v. Dizon*, 297 Ill. App. 3d 880, 885 (1998). Under the probable cause standard, " '[e]vidence that will sustain a conviction is not required, but more than mere suspicion is necessary. [Citation.]' " *People v. Kidd*, 175 Ill. 2d 1, 22 (1996), quoting *In re D.G.*, 144 Ill. 2d 404, 412-13 (1991) (Miller, C.J., dissenting, joined by Cunningham, J.).

■ Foster claims there was no probable cause to arrest him and

that he was arrested simply because his height and weight were similar to the description of one of the suspects and because he was in the company of Toney, one of the offenders for whom probable cause existed. It is true that a person's mere proximity to others suspected of criminal activity does not, without more, give rise to probable cause to arrest. *People v. Drake*, 288 Ill. App. 3d 963 (1997). Moreover, a person's similarity to a general description of an offender does not by itself provide probable cause to arrest; however, it may provide support for probable cause when combined with other relevant facts and circumstances known to the arresting officer. *People v. Lippert*, 89 Ill. 2d 171, 180-81 (1982). Though the court noted that Foster was arrested in the company of Toney and agreed that the description which Foster matched was a general description, the court took note of a number of other facts supporting probable cause to arrest.

■ A witness to the shooting who knew Toney gave police a description of the automobile involved, as well as a general description of Foster and Luckett and a more detailed description of Toney. Further, the witness told the police where the car might be found, and a car matching its description and registered to Toney was indeed found at that location. Police officers then noticed the vehicle was warm to the touch, indicating it had been recently driven. A neighbor near where the car was found told police that persons who owned the car could be found a few doors down. Three males were involved in the shooting. All three male suspects were together at the time of the arrest, which occurred within approximately one hour of the shooting. They matched the descriptions given to police. Consistent with the information provided to the police by the neighbor, they were found just a few doors down from where the car was located. A review of the record indicates sufficient facts under the totality of the circumstances to support the trial court's finding of probable cause.

## B. Closing Argument

■ Foster contends he was denied a fair trial because the State misstated the law regarding the presumption of innocence in closing argument. Foster failed to properly preserve this issue for appeal by failing to object at trial and failing to raise the issue in a posttrial motion; therefore, this issue is waived. *People v. Enoch*, 122 Ill. 2d 176 (1988).

## C. Jurisdiction of the Trial Court to Reconsider Foster's Sentence

On March 27, 1997, the trial court sentenced Foster to a total of 18 years with concurrent terms of 18, 17, 17, 10 and 10 years in prison, respectively, for the convictions of second degree murder, two counts of attempted murder and two counts of aggravated discharge of a

firearm. These sentences were based on the prosecution's original argument that the offenses were not part of a single course of conduct. The State urged the trial court to use its discretion and impose consecutive sentences under section 5—8—4(b) of the Unified Code of Corrections (730 ILCS 5/5—8—4(b) (West 1994)); however, the trial court rejected this argument and, using its discretion, imposed concurrent sentences under that section.

At that time the State filed no motion to reconsider sentence. On April 7, 1997, defendant filed his notice of appeal. Nine days later, on April 16, 1997, the State filed a motion to reconsider the sentence. Over defense objection based on lack of jurisdiction, on May 9, 1997, at a hearing on the State's motion to reconsider sentence, the trial court found the original sentence void and resentenced defendant consecutively to a total of 35 years.

The court reversed its original finding that the offenses were not part of a single course of conduct and concluded during the second hearing that the offenses constituted a single course of conduct under section 5—8—4(a), subject to mandatory sentencing based on the class of felonies involved and severe bodily injury. 730 ILCS 5/5—8—4(a) (West 1994). The court ordered the sentence of 18 years for second degree murder, the triggering offense under section 5—8—4(a), to run consecutively to the concurrent terms of 17 years for the attempted first degree murder convictions. The original sentence was thereby increased from a total of 18 years to a total of 35 years. Foster contends that the trial court erred when it reconsidered his sentence and ordered consecutive sentences because the trial court had been divested of jurisdiction. The State contends the issue of jurisdiction is irrelevant because the trial court had the authority to at any time correct a void sentence.

Relying on *People v. Arna*, 168 Ill. 2d 107, 112-13 (1995), the State argues that "the trial court had the authority to resentence defendant Foster at any time, and the divestiture of jurisdiction was irrelevant," because jurisdiction was reinstated for the limited purpose of resentencing Foster once the trial court was apprised of the "void" or "illegal order" it had issued. Trial court jurisdiction was not at issue in the *Arna* case, which addressed the authority of the appellate court to correct a void sentence, not the authority of the trial court to correct a void sentence. *Arna*, 168 Ill. 2d at 113. Defendant in *Arna* argued that once the trial court decided that consecutive terms were not mandatory, the appellate court had no authority to review this determination. The State responded that the appellate court acted pursuant to its inherent authority to correct void orders of the trial court. *Arna*, 168 Ill. 2d at 112. The *Arna* court concluded, "Because the or-

der imposing concurrent terms was void, the appellate court had the authority to correct it at any time." *Arna*, 168 Ill. 2d at 113. While *Arna* stands for the proposition that the appellate court may set aside a void sentence and correct it at any time, *Arna* does not resolve the question presented here, whether upon motion by the State to reconsider sentence a trial court may reinstate its own jurisdiction to "correct" a sentence after a notice of appeal has been filed by the defendant. *Arna*, 168 Ill. 2d at 112-13.

In *People v. Bounds*, 182 Ill. 2d 1 (1998), the supreme court addressed the issue of what impact the filing of a notice of appeal has on the jurisdiction of the trial court. In *Bounds*, the capital defendant filed a postconviction petition. On March 28, 1996, the circuit court granted the State's motion to dismiss the petition. Defendant filed both a motion to reconsider and a notice of appeal. The court addressed the issue of what impact the defendant's simultaneous filing of the notice of appeal and the motion to reconsider had on the trial court's jurisdiction. The *Bounds* court concluded that the filing of the notice of appeal divests the circuit court of jurisdiction, and the jurisdiction of the reviewing court attaches *instanter*. *Bounds*, 182 Ill. 2d at 3.

Some courts prior to *Bounds* held that a defendant's motion to reconsider the sentence that is filed after his notice of appeal has been filed implicitly dismisses his notice of appeal and revests the trial court with jurisdiction. See *People v. Richmond*, 278 Ill. App. 3d 1042 (1996) (and cases cited therein). In *Richmond*, the defendant filed both the notice of appeal and a subsequent motion to reconsider within 30 days of the judgment. The court held that, by filing the subsequent motion, defendant intended to dismiss his notice of appeal and thereby revest the trial court with jurisdiction. *Richmond*, 278 Ill. App. 3d at 1046.

However, *People v. Jenkins*, 303 Ill. App. 3d 854 (1999), following *Bounds*, held that if a notice of appeal has been filed then the appellate court has jurisdiction even though defendant's motion to reconsider was filed within 30 days of judgment. The *Bounds* case, together with previous cases, addresses what impact the defendant's motion to reconsider has on jurisdiction. In this case we address what impact the State's motion to reconsider sentence made after defendant has filed notice of appeal has on jurisdiction.

■ The finding in *Bounds* that a defendant's own motion to reconsider sentence filed simultaneously with defendant's notice of appeal fails to reinstate jurisdiction in the trial court supports our conclusion in this case that the State's motion to reconsider would likewise fail to reinstate jurisdiction in the trial court. The State could not seek

reconsideration of Foster's sentence in the trial court after the defendant filed the notice of appeal because that notice divested the trial court of jurisdiction and only the appellate court had the authority to review the sentence at that time. *Bounds*, 182 Ill. 2d at 3, citing *Daley v. Laurie*, 106 Ill. 2d 33, 37 (1985). Filing a notice of appeal divests the trial court of jurisdiction to reconsider, modify, or correct a defendant's sentence and the appellate court retains jurisdiction until it issues its mandate. *People v. Whitney*, 297 Ill. App. 3d 965, 970 (1998). We have found no case, statute or rule that allows the State to circumvent a defendant's appeal by simply filing a motion to reconsider in the trial court after the defendant has filed a timely notice of appeal.

Moreover, the State failed to seek timely reconsideration of Foster's sentence. In *Williams*, the Illinois Supreme Court addressed the mechanics of seeking timely reconsideration of an order and noted:

"If an order is appealable when entered, and no timely reconsideration is obtained from the judge who entered it *** a dissatisfied party's remedy is appeal, not relitigation ***. ***

*** [L]ogic dictates that, if parties were permitted to reopen the subject matter of a decided order each time a new legal theory came to mind, litigation would seemingly have no end." *People v. Williams*, 138 Ill. 2d 377, 388 (1990).

This court has ruled that a motion to reconsider sentence that is pending at the time the notice of appeal is filed prevents jurisdiction from attaching in the appellate court. *People v. Neal*, 286 Ill. App. 3d 353 (1996). We note, however, in this case the State's motion to reconsider sentence was not pending at the time the defendant filed the notice of appeal. Although the State's motion was made within 30 days of the judgment, an otherwise timely motion to reconsider sentence filed after the defendant has filed a notice of appeal does not prevent jurisdiction from attaching in the appellate court. *People v. Jackson*, 239 Ill. App. 3d 165, 166 (1992). The State could have obtained reconsideration of the sentence order by filing its motion before the notice of appeal was filed by the defendant.

Even if we were to find the sentence void in the present case, this would not cure the jurisdictional problem. The State filed its motion to reconsider after Foster filed a notice of appeal. When the notice of appeal is filed, the appellate court's jurisdiction attaches *instanter*, and the cause is beyond the jurisdiction of the trial court. *Bounds*, 182 Ill. 2d at 3. Accordingly, because the trial court's order resentencing Foster to consecutive terms was made in the absence of proper jurisdiction, it must be vacated. This finding resolves Foster's related motion regarding lack of jurisdiction which was taken with the case. Whether the original sentence was void will determine whether the original sentence should be reinstated. We examine that issue next.

## D. Original Sentence Valid or Void?

The original concurrent sentences in this case were based on the State's argument that the offenses were not part of a single course of conduct. The statutory scheme in effect when defendant was sentenced delineates certain conditions under which consecutive terms can be mandatory or discretionary. See 730 ILCS 5/5—8—4(a), (b) (West 1994). The first qualifying criterion for mandatory consecutive sentencing under section 5—8—4(a) was whether the offenses were "committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective." 730 ILCS 5/5—8—4(a) (West 1994). If these conditions were satisfied, then consecutive sentences were mandatory if either: (1) one of the offenses was a Class X or Class 1 felony and the defendant inflicted severe bodily injury; or (2) one of the offenses was for sexual assault or aggravated sexual assault.

However, under the statutory scheme that applied to defendant's sentence, consecutive terms could also be imposed on a discretionary basis for offenses not committed within a single course of conduct if the nature and circumstances of the offense and the history and character of the defendant were such that the trial court deemed such a consecutive term necessary to protect the public from further criminal conduct by the defendant. 730 ILCS 5/5—8—4(b) (West 1994) (subsequent to defendant's sentencing, the legislature amended section 5—8—4(b) of the Unified Code of Corrections (see 730 ILCS 5/5—8—4(b) (West 1998))).

It is on this discretionary basis provided by section 5—8—4(b) that the State argued for consecutive sentences at Foster's original sentencing hearing, stating that the offenses of second degree murder and attempted murder "did not arise out of a single course of conduct" but were "two separate course of conducts [sic]," based on the different times, locations, and victims of the shootings and differences in what was accomplished. The trial judge commented that the acts were "three somewhat [sic] separate shootings" occurring at "absolutely different locations," but in using his discretion, he rejected the State's argument for consecutive sentencing and ordered concurrent terms of imprisonment.

The State claims that, under *People v. Arna*, the original concurrent sentence in this case was "void." We disagree. In *Arna*, the Illinois Supreme Court found that the trial court mistakenly imposed concurrent sentences where each of the conditions for mandatory consecutive sentences under section 5—8—4(a) was satisfied. *Arna*, 168 Ill. 2d at 113. The facts of the instant case do not satisfy the conditions for mandatory consecutive sentences and the trial court did not

mistakenly impose concurrent sentences at the original sentencing hearing.

The *Arna* defendant was convicted of two counts of attempted murder after he shot his ex-girlfriend and her young child at a currency exchange. The supreme court found that the sentence imposed by the trial court, concurrent terms of 30 and 45 years, did not comply with section 5—8—4(a) because the offenses were committed in a single course of conduct with no substantial change in the defendant's criminal objective. The supreme court further held that the attempted murder convictions, Class X felonies, resulted in severe bodily injury and triggered application of section 5—8—4(a)'s mandatory consecutive sentencing. *Arna*, 168 Ill. 2d at 111-12. The supreme court considered the concurrent sentences imposed by the trial court void because each of the requirements for mandatory consecutive sentencing was met and it affirmed the appellate court's remand to the trial court for consecutive sentencing as mandated by the statute.

Foster's original sentence of concurrent terms was not due to a legal mistake concerning the application of section 5—8—4(a), as was the case in *Arna*. Rather, the original sentence in this case reflected the fact that the second degree murder and attempted murders were separate offenses, motivated by different criminal objectives, and were not committed as part of a single course of conduct. The evidence, the jury verdict, and the State's own argument supported the original sentence.

Bobby Roberson, a State witness, provided testimony that these offenses were not committed as part of a single course of conduct. During a period of approximately 15 minutes, Roberson heard shots fired from three separate locations. First he heard a single shot, then several minutes passed and he heard 20 shots, and time passed and he heard more shots. In addition to witness testimony, the firearm evidence supported the State's original argument that these shootings were not committed as part of a single course of conduct. The evidence supported the conclusion that there were separate shootings, beginning with an initial shooting directed at the Harris brothers, to the exclusion of other victims mentioned in the indictment. A period of time passed between that shooting and a second shooting. The second shooting occurred at a different location and involved a different group of people, not including the Harris brothers. Finally, there were additional shots fired at other people farther down the street after more time passed.

The State, at the original sentencing hearing and relying on the evidence, asked the court to use its discretion and impose consecutive sentences under subsection (b) of section 5—8—4 and argued as follows:

"[W]e'd be asking that *** he also be sentenced for the second degree murder be consecutive to the sentence for the attempt murders [sic]. *** One of the bases is that *** it does not arise out of a single course of conduct. There is a difference between the times he shot at them and what was accomplished. There is different victims to begin with and there is a different location that it takes place, though it's in the same area. I believe it's a different transaction and can be consecutive. *** I think the Court is allowed to make consecutive sentences or it's discretionary as consecutive sentences if it's two separate course of conducts. And our argument that it is, in fact, two separate course of conducts. *** This defendant fired in three different locations at several different people. And we'd be asking that in order to protect the public, those sentences be consecutive."

The verdict of the jury supported the argument made by the State. The jury found Foster guilty of second degree murder of Phillip Matthews, but guilty of attempted first degree murder of Antoine Harris and Bobby Roberson. For a second degree murder verdict, the jury must find that the defendant unreasonably believed that circumstances existed that would justify the use of deadly force. 720 ILCS 5/9—2(a) (West 1996). By contrast, an attempted first degree murder verdict requires the jury to find that the defendant, without justification and with the specific intent to kill, does any act that constitutes a substantial step toward killing. 720 ILCS 5/8—4, 9—1, 9—2 (West 1996). The elements of intent required for second degree murder and attempted first degree murder are completely different. *People v. Lopez*, 166 Ill. 2d 441, 448-49 (1995). The jury's verdicts contained implicit findings, supported by the evidence, that the second degree murder and the attempted first degree murder offenses were based on different criminal objectives.

Application of section 5—8—4(a) turns on mandatory consecutive sentencing criteria that can be subject to interpretation. *People v. Summers*, 291 Ill. App. 3d 656, 661 (1997). Here the court's interpretation at the original sentencing hearing was supported by the evidence, the verdicts of the jury and the State's argument. In *People v. Eubanks*, 283 Ill. App. 3d 12, 25 (1996), the court found that the mandatory consecutive sentences provision of section 5—8—4(a) did not apply where the circuit court's imposition of concurrent sentences indicated its belief that the offenses did not occur in a single course of conduct and that conclusion was supported by the evidence. As in *Eubanks*, in the instant case the trial court's imposition of concurrent sentences and its observations that the offenses were separate acts demonstrate its belief that the offenses were not part of a single course

of conduct and therefore the mandatory consecutive sentence provision of section 5—8—4(a) did not apply. That belief was supported by the record.

■ Since the mandatory consecutive sentencing provision of section 5—8—4(a) did not apply, the court, under section 5—8—4(b), had the discretion to impose consecutive sentences, but it rejected the State's request for consecutive sentencing under subsection (b) and, using its discretion, imposed concurrent sentences. Thus, the concurrent sentences imposed at the original sentencing hearing were not based on legal error concerning applicability of section 5—8—4(a), as was the case in *Arna*, but on a proper determination that the first qualifying criterion for mandatory consecutive sentencing was not satisfied because the offenses were not "committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective," as required by section 5—8—4(a) (730 ILCS 5/5—8—4(a) (West 1996)). The trial judge's comments were consistent with the State's position that the offenses "did not arise out of a single course of conduct." The trial judge observed that the acts were "three somewhat [sic] separate shootings" occurring at "absolutely different locations," but in using his discretion, he rejected the State's request for discretionary consecutive sentencing under section 5—8—4(b). We are not persuaded by the State's argument that the defendant's original concurrent sentences were "void." Based on the record the trial court's imposition of concurrent sentences was not a legal mistake, but, rather, the sentences were valid sentences under section 5—8—4(b) and were supported by the evidence.

At the second sentencing hearing, the State attacked the concurrent sentences under a version of the facts different from the version that it relied upon at the first sentencing hearing and argued that the shootings in this case were a single course of conduct with a single unchanged criminal objective. Once the facts were resolved in a final manner that resulted in concurrent sentences, that determination could not be attacked under a different version of the facts. *People v. Summers*, 291 Ill. App. 3d 656 (1997).

In *People v. Summers*, 291 Ill. App. 3d 656 (1997), the defendant's negotiated sentence of concurrent terms was based on a plausible version of the facts, and the sentence could not be attacked as void for failing to comply with section 5—8—4(a) under a different version of the facts. In this case, the State's dissatisfaction after the first sentencing hearing with the trial court's use of discretion in rejecting the State's request for consecutive sentencing did not permit the State to reopen litigation after the notice of appeal was filed by defendant simply because it came up with a new interpretation of the facts in support of consecutive sentencing. See *Williams*, 138 Ill. 2d at 387-88.

Moreover, the trial court could not increase the sentence once a valid sentence was imposed. Such an increase in sentence is prohibited by statute as follows:

"A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 30 days after the sentence is imposed. A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of the sentence. However, the court may not increase a sentence once it is imposed." 730 ILCS 5/5—8—1(c) (West 1994).

In *People v. Muellner*, 70 Ill. App 3d 671 (1979), the court held that the trial court improperly increased defendant's sentence by changing the original concurrent sentences to consecutive sentences. In *Muellner*, the defendant was convicted of two counts of rape and two counts of deviate sexual assault and was sentenced to concurrent terms of four to eight years on all counts. The State filed a motion for reconsideration, and the trial court ordered that the sentences on the rape counts would run consecutively to the sentences on the deviate sexual assault counts. On appeal the court held that the resentencing was an impermissible increase in sentence in violation of what is now section 5—8—1(c). The court rejected the State's argument that the sentence was not increased, but merely modified, and indicated "[i]t is our opinion that the resentencing of defendant to consecutive terms after originally imposing concurrent sentences was in the very real sense an increase in the length of his sentence because his earliest possible parole release will necessarily be delayed to a later date in time." *Muellner*, 70 Ill. App. 3d at 683.

In the instant case, as in *Muellner*, the trial court in a very real sense increased the length of defendant's sentence. Foster was originally given an 18-year sentence and then resentenced to 35 years. Defendant was first sentenced to concurrent terms of 18, 17, 17, 10 and 10 years in prison, respectively, for the convictions of second degree murder, two counts of attempted murder and two counts of aggravated discharge of a firearm. After the hearing on the State's motion to reconsider sentence when the trial court ordered the 18-year sentence for second degree murder to run consecutively to the concurrent terms of 17, 17, 10 and 10 years, it impermissibly increased defendant's sentence by 17 years in violation of the plain language of section 5—8—1(c). "By its express terms, section 5—8—1(c) forbids the increase in a sentence once it has been imposed" (*People v. Kilpatrick*, 167 Ill. 2d 439, 446 (1995)).

The original sentencing order of March 27, 1997, imposing concurrent sentences was a valid sentence supported by the evidence and the

verdicts of the jury. The original concurrent sentence is reinstated because the offenses were not committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective and therefore under the facts of this case the first qualifying criteria for mandatory consecutive sentencing under section 5—8—4(a) was not satisfied. The trial court properly exercised its discretion by imposing concurrent sentences under section 5—8—4(b). We therefore need not address defendant's additional arguments regarding consecutive sentencing.

### E. Truth-in-Sentencing

■ In *People v. Reedy*, 186 Ill. 2d 1 (1999), the supreme court declared the truth-in-sentencing legislation unconstitutional and Foster will receive day-for-day credit pursuant to the mandate of *Reedy*.

### II. Conclusion

For the foregoing reasons we affirm the ruling denying Foster's motion to suppress and we affirm Foster's convictions. We vacate the resentencing order entered May 9, 1997, imposing consecutive sentences because it was entered by the trial court without jurisdiction and we reinstate the original valid order sentencing Foster to concurrent terms in prison of 18, 17, 17, 10 and 10 years, respectively, for the convictions of second degree murder, two counts of attempted murder and two counts of aggravated discharge of a firearm.

Affirmed; sentence vacated and original sentence reinstated.

TULLY and GALLAGHER, JJ., concur.