# Illinois Official Reports

## Appellate Court

---

### *People v. Amans*, 2018 IL App (2d) 170405

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHANE M. AMANS, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-17-0405 |
| Filed | June 27, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Boone County, No. 14-CF-0312; the Hon. C. Robert Tobin III, Judge, presiding. |
| Judgment | Imprisonment order vacated, and probation order reinstated.<br>Cause remanded with directions. |
| Counsel on Appeal | Christopher DeRango, of Schafer DeRango & Cain, LLP, of Rockford, for appellant.<br><br>Tricia L. Smith, State's Attorney, of Belvidere (Patrick Delfino, David J. Robinson, and Barry W. Jacobs, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion.<br>Presiding Justice Hudson and Justice Jorgensen concurred in the judgment and opinion. |

**OPINION**

¶ 1      Defendant Shane M. Amans pled guilty to possession with the intent to deliver more than 2000 but not more than 5000 grams of cannabis. 720 ILCS 550/5(f) (West 2014). Defendant was originally sentenced to a four-year term of imprisonment. After granting his motion to reconsider, the trial court resentenced defendant to a term of 48 months' probation. The State filed a motion to reconsider that order. The trial court granted the State's motion and resentenced defendant to four years' imprisonment. On appeal, defendant argues that (1) the trial court abused its discretion when it originally sentenced him to four years' imprisonment and (2) the trial court erred in reconsidering his sentence of probation on the State's motion and reimposing the original sentence. For the following reasons, we vacate the trial court's order resentencing defendant to four years' imprisonment, we reinstate its order sentencing defendant to 48 months' probation, and we remand this cause with directions.

¶ 2      

## I. BACKGROUND

¶ 3      At the sentencing hearing, Detective Patrick Imrie testified for the State in aggravation. Imrie had been a narcotics detective for nine years, and he had extensive training and experience in cannabis investigations. He had dealt with cannabis hundreds of times and had seen cannabis in almost all of its varieties. He had taken several courses in identifying different types of plants and their strengths as a psychoactive drug.

¶ 4      Imrie was part of a team that executed a search warrant of defendant's home. He recorded a video of the home where the cannabis was found, in two "growrooms" in the basement. The basement was unfinished, with the exception of two drywalled rooms. The growrooms were behind a large, white bookcase. The bookcase was on a hinge, and if closed, it would block access to the growrooms. Inside the growrooms were numerous black plastic tubs that were used for housing water and plants in "grow cubes." There were numerous fans and "electronic ballasts for converting electricity to make the electricity go into these specific types of grow lights from a standard electrical setup in [the] house." Imrie said that there were machines similar to air purifiers in the rooms. The machines, one of which was connected to electricity, would "basically suck in the smell of the cannabis" so that neighbors or anyone coming into the house could not smell it.

¶ 5      In the smaller of the growrooms, several grow lights were hung from the ceiling, over the plastic tubs. The grow lights were on when Imrie entered that room, and they were above 12 live cannabis plants that were in plastic tubs. In each room, the tubs were connected by PVC piping, and water was being pumped into those tubs. Aeration systems were set up, and there was a 55-gallon barrel full of water that was actively feeding the plants in each room. In both rooms, fans were blowing at the plants. Imrie explained that fans are used so the plants have to resist the wind, which typically makes a plant grow stronger.

¶ 6      Imrie said that the approximate street value of the cannabis found in defendant's house was around $300 per ounce or $10 per gram. At that price, the cannabis found would be worth approximately $39,000. Imrie said that the plants were very large, around two to three feet high, and a couple of feet around. However, the plants were not ready to be harvested yet.

¶ 7    Imrie opined that the cannabis found in defendant's house was of high quality. The buds on the plants were mature, and they had a lot of crystallized THC on the outside of them. People buy cannabis for the psychoactive properties of THC. According to Imrie, the buds on these particular plants seemed to have a high quality of THC based upon the resin that he could see on the buds.

¶ 8    Imrie then identified several photographs that were taken at the scene. He described the grow cubes that were found in the house. He explained that grow cubes are used instead of dirt because they give the roots of the plants room to grow. Imrie also identified nutrients that were used to grow cannabis plants along with bags of processed cannabis and a digital scale that were found in an upstairs room in the house. He also identified three bags of cannabis that were found in a freezer in the home. Finally, he identified a photograph of a humidistat, a machine that measures humidity, that was used in the growrooms.

¶ 9    On cross-examination, Imrie said that he was not sure if the bookcase that hid the grow rooms was on a hinge. When asked whether it was much more common for cannabis to sell for $6 per gram, rather than the $10 valuation Imrie had assigned to the cannabis on direct examination, Imrie said that there were huge fluctuations in the price of cannabis. As for the cannabis found in the bags upstairs, Imrie said that he did not go through and inspect all of it.

¶ 10   Imrie said that defendant was very cooperative when the police were executing the search warrant. In fact, one of the first things defendant said to the police after they told him that they had a search warrant was, "[y]ou won't need it. It's all downstairs."

¶ 11   On redirect examination, Imrie said that he had purchased cannabis for as much as $500 per ounce and as little as $125 per ounce. Based upon his training and experience, he reiterated that he considered the cannabis in defendant's home to be high quality. Finally, Imrie said that the amount of cannabis indicated that it was not for personal use.

¶ 12   The defense then called Sam Maurici as a character witness. Maurici testified that he and defendant had been friends for the last 20 years. They met in high school and played football together. Maurici had contact with defendant around every two weeks. Maurici's family and defendant's family took vacations together, and their children played together. Defendant was a very involved father who watched his three-year-old daughter almost every day when defendant's wife was at work. If the trial court were to incarcerate defendant, Maurici believed that it would cause a hardship to defendant's family.

¶ 13   Maurici had spent time with defendant over the last two years since his arrest for the instant offense. He did not believe that defendant would be likely to commit additional crimes in the future, but he also did not know that defendant was committing this crime. If he had, he would have persuaded defendant to think differently about his actions and take a different course. Defendant had not expressed his feelings to Maurici about the instant offense, because defendant is a private person. Based upon his relationship with defendant and his knowledge of defendant's character, Maurici believed that, if the trial court placed defendant on probation, defendant would likely comply with any conditions placed on him.

¶ 14   The defense then called Ryan Curry as a character witness. Curry testified that he had known defendant for 20 years and that they had met in high school. He spoke to defendant every day. He did not know that defendant had a grow operation in his basement. If he had known, he would have persuaded defendant to make other decisions and would have explained to defendant the ramifications of his actions. Curry said that he did not believe that defendant was likely to commit another crime in the future. Defendant is a great father and

husband, and Curry would not trust anyone more than he did defendant. Defendant told Curry that if he were incarcerated it would not only affect him financially, such as by causing him to lose his house, but it would affect his family as well. Defendant had expressed extreme remorse to Curry over committing this crime. He believed that defendant would comply with all conditions placed upon him if the trial court were to sentence him to probation. Curry had been wounded in Iraq in 2006 was now medically retired. Defendant is one of Curry's closest friends, and Curry could completely rely on defendant if he ever needed anything.

¶ 15 Defendant then spoke in allocution. He said that, a year prior to his arrest, his family had a lot of bills. He and his wife were having a lot of financial difficulties, and he thought that marijuana could get him out of his financial problems. Instead, it only caused his family hardship and worry. He intended to do it only long enough to get caught up with his bills, and at the time, he thought that it was his only option. He now realized what a mistake he had made.

¶ 16 Defendant knew that he had to be punished for his decisions and he would accept any punishment that the court would impose. However, if he were sentenced to incarceration, his wife and daughter would struggle financially. Their childcare costs would go up, and they would not have any means to pay all of their bills. They would almost certainly lose their home. His previous job allowed him to be flexible with his hours so that he could be with his daughter most of the day while his wife was gone 10 hours a day and traveled for work about two months of the year. He and his wife do not have parents who live close enough to help out, and he was unsure what it would do to his daughter emotionally not to see him every day. Defendant said that he could not believe what an idiot he was to put his family in this position. He gave the trial court his word that it would never see him in the courtroom again, and he asked the trial court not to make his family pay for his mistakes.

¶ 17 The State then argued that a sentence of probation would deprecate the seriousness of the offense and be inconsistent with the ends of justice. It said that it was clear that a lot of thought and planning had been put into this offense and that a sentence of imprisonment would deter other people who wanted to start up this type of operation and make fast money. The State said that probation was an option, but that the legislature also set a prison range of 4 to 15 years. Therefore, the State requested that defendant be sentenced to a term of four years' imprisonment.

¶ 18 Defense counsel argued that there was a statutory presumption of probation in a case like this. As for mitigation, counsel argued that several statutory mitigating factors applied: (1) defendant's conduct did not cause or threaten serious harm to another, (2) defendant had no history of prior delinquency or criminal activity and had led a law-abiding life for a substantial period of time before the commission of the instant offense, (3) defendant was unlikely to commit another crime, (4) defendant was likely to comply with the conditions of a probation period, and (5) a sentence of imprisonment would cause excessive hardship to his dependents. After further argument, counsel requested that defendant be sentenced to a term of probation.

¶ 19 The court said that it had heard some evidence from two of defendant's close friends about defendant's good character. However, it was not sure whether those men knew defendant as well as they thought they did because defendant was able to hide the grow operation from them. With regard to excessive hardship to his dependents, the court said that

it did not doubt that if defendant were sentenced to imprisonment he would likely lose the family home, his wife would incur a huge financial burden, and his incarceration would be an emotional burden on his whole family. However, it did not think that defendant's wife "got to play innocent bystander." It could reasonably infer that she knew that there was a grow operation going on in her basement. The court then noted that defendant had pleaded guilty, thereby avoiding the cost to the State of a trial, and that he had taken responsibility for his conduct and cooperated fully with law enforcement.

¶ 20    The court then discussed whether it believed that a sentence of imprisonment was necessary to deter others from committing the same crime. It noted that, although it could not compare defendant's grow operation to any others, it found defendant's operation to be extensive and sophisticated. The court said that, with the decriminalization of cannabis for personal use, the State of Illinois had created a new market of people who might not go to housing projects in Rockford, for example, to purchase cannabis, but would go to a beautiful subdivision like the one defendant lived in, knock on the door, purchase the drug, and go home. It said that this type of new market was ripe for a markup, since people would pay more if they did not have to go to a seedy neighborhood to buy cannabis. Therefore, there needed to be consequences for people who started these types of grow operations. Accordingly, the court sentenced defendant to four years' imprisonment and imposed upon him a $37,000 street-value fine.

¶ 21    Defendant filed a motion to reconsider his sentence, and then an amended motion. At the hearing on the motion, the trial court rejected each of the grounds he raised as meritless. It reaffirmed that, at the time of sentencing, it believed that a sentence of incarceration was necessary to deter others. It said that it could not do anything about the minimum that was required for this offense. Curiously, the court then said that it did not think that four years' imprisonment was the correct sentence at the original sentencing hearing, and it did not think that the sentence was any better today. It noted that, since defendant was originally sentenced, he had served four months in prison, which it did not have to consider at the original hearing. In ruling on the motion to reconsider, the court then said:

> "And while I don't intend to circumvent any of the mandatory minimums nor set up a process that I believe is appropriate to do so, on this particular case I am hoping and trusting that the message has been sent not just to you but to other people who are in your situation, otherwise law-abiding people that are interested in making a quick buck and getting a grow operation in their basement. And based upon all of this now with the additional factor that as you sit here [today] have served at least four months in the Department of Corrections, I am going to reconsider my sentence. I'm going to sentence you to 48 months of probation, time served for the time you've been in the Department of Corrections or actually in custody."

¶ 22    The State argued that on a motion to reconsider it was improper to consider factors that had occurred after the sentencing hearing. In response, the trial court said that the State could appeal. It then vacated defendant's four-year term of imprisonment and entered an order sentencing defendant to 48 months of probation with credit for time served.

¶ 23    On March 1, 2017, the State filed a motion to reconsider the court's ruling on defendant's motion to reconsider his sentence. At a hearing on the State's motion, defense counsel argued that the State had no authority to even make its motion and that therefore the court should not hear it. If the court decided to hear it, counsel contended, then the court could not increase

the sentence beyond the 48 months of probation to which it had sentenced defendant when it granted his motion to reconsider. The court then gave the parties time to research the issue of whether the court had the authority to hear the State's motion at all, particularly in light of *People v. Castleberry*, 2015 IL 116916.

¶ 24 At the hearing on the issue of the court's authority to hear the State's motion, the court agreed with defendant that, on a motion to reconsider a sentence, it could not vacate the sentence imposed and instead order a more severe sentence. However, the court said that, here, it was not reconsidering a sentence but instead reconsidering *its ruling on the motion to reconsider the sentence*. Specifically, the court said:

"But really I think the reason that I keep jurisdiction over these things for 30 days is so I can clear up any mistakes that I make. And again, this is not the State asking for a greater sentence. It's asking for them to—for me to correct a mistake I made in granting the motion itself to reconsider. I considered a thing that I ought not have. This is not a discretionary thing. Clearly, my findings were a sentence—as originally sentenced based upon the evidence provided at the sentencing hearing was proper. I considered things that happened subsequent to that, in particular his incarceration to the Department of Corrections, and I shouldn't have. And ultimately the State has not asked me to go back and take a look at what otherwise would be discretionary. Clearly once I make a finding that the sentence itself based upon the evidence is proper and the minute I deviate from denying the motion to reconsider the sentence based upon the evidence that I ought not to have considered, the answer to the original motion to reconsider is pretty straightforward and non-discretionary. I should have denied it.

I believe I have the authority to deny it and I'm going to do that."

¶ 25 The trial court then reimposed the previously vacated sentence of four years' imprisonment. Defense counsel objected, arguing that the trial court was ignoring the plain language of section 5-4.5-50(d) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-50(d) (West 2014)). Specifically, he said:

"[DEFENSE COUNSEL]: Judge, respectfully you've just created an entire legal theory for not following the precise language of 4.5-50(d) from which there is no authority in the State of Illinois of any kind for a void imposed sentence that doesn't violate a statutory requirement. There's no language of any kind—

"[TRIAL COURT]: Courts have always had the ability to review any sentencing irregularities. Looking at *People v. Foster* which was—in that case the State filed a motion to reconsider the sentence; however, the defendant had filed a notice of appeal prior to that time. In that case the court of appeals said that normally you would hear the motion to reconsider the sentence filed by the State; however, you got—that court had already lost its jurisdiction because the defendant had already filed his notice of appeal prior to that filing. So even in that case, it is acknowledged that this is a procedural—a procedural possibility. So the answer to say that it doesn't happen, there's no case law to suggest it doesn't happen, that's not true."

¶ 26 Defendant filed a second motion to reconsider his sentence, which the trial court denied. The court later granted defendant's motion to stay the sentence pending appeal.

¶ 27                                    II. ANALYSIS

¶ 28       On appeal, defendant argues that (1) the trial court abused its discretion in entering its original sentence of incarceration and (2) after reducing that sentence to probation, the trial court erred in granting the State's motion to reconsider and reimposing the original sentence. We will address defendant's second argument first because, if we find that the trial court violated the Code when it imposed an increased sentence, we need not address the first argument.

¶ 29       Defendant alleges that it was error for the trial court to even entertain the State's motion to reconsider defendant's sentence of probation. After failing to reject the matter out of hand, he argues, it was further error to grant the State's motion to reconsider and reimpose the original sentence of imprisonment. He argues that such an increase is expressly prohibited by section 5-4.5-50(d) of the Code (*id.*). Defendant points out that imprisonment was not mandatory here and that the court had the option to sentence defendant to up to 180 days in the county jail along with a term of probation. *Id.* § 5-6-3(e).

¶ 30       Defendant also argues that whether or not he agreed with the trial court's reasons for vacating the original sentence, it was in fact vacated and a term of probation was entered in its stead. Accordingly, the State should not have been allowed to seek reconsideration of the sentence of probation that he received when the trial court granted his motion to reconsider the original sentence. Once the valid sentence of probation was imposed, he argues, the trial court was without authority to increase his sentence upon the State's motion to reconsider. Although the trial court said that it did so to correct an error that it had made in considering postsentencing evidence at the hearing on defendant's motion to reconsider, defendant contends that the trial court's power to address such a sentencing error was eradicated in *Castleberry*, 2015 IL 1169616, where our supreme court abolished the "void sentence rule." Defendant points out that the *Castleberry* court held that the only correct remedy for the State in the face of what it believed was a "void" sentence was to seek *mandamus* relief. Specifically, defendant directs us to *Castleberry*'s holding that "[t]he remedy of *mandamus* therefore permits the State to challenge criminal sentencing orders where it is alleged that the circuit court violated a mandatory sentencing requirement, but precludes the State from challenging ordinary, discretionary sentencing decisions." *Id.* ¶ 27. Defendant argues that the trial court here seemed to seize on the concept of a "void" sentence, as discussed in *Castleberry*, to justify vacating the sentence of probation, initially finding that the sentence here was not void but then treating it like a void sentence even though it did not fit the characteristics of a void sentence as set out in *Castleberry*. He argues that the probation sentence was validly imposed and that the second sentence of imprisonment was clearly an increase from that valid sentence and thus forbidden, as expressly set out in *People v. Foster*, 309 Ill. App. 3d 1 (1999).

¶ 31       In response, the State first argues that, contrary to defendant's reading of the statute, the plain language of section 5-4.5-50(d) of the Code does not explicitly prohibit the State from moving to reconsider a court's sentencing order. In fact, it argues, Illinois Supreme Court Rule 303(a)(2) (eff. Jan. 1, 2015) provides that a timely filed posttrial motion, even if preceded by the filing of a notice of appeal, shall be heard by the trial court. It notes that, although Rule 303(a)(2) is a civil rule, it has been applied in criminal cases. See *People v. Neal*, 286 Ill. App. 3d 353, 354-55 (1996).

¶ 32    The State then argues that, at the hearing on its motion to reconsider defendant's sentence of probation, the trial court correctly interpreted *Castleberry* when it found that it retained jurisdiction to correct any mistakes in sentencing and that granting defendant's motion to reconsider his sentence based upon postsentence evidence had been a mistake. It relies upon *Foster* to support the proposition that, as occurred here, the State may seek reconsideration of a sentencing order as long as the court retains jurisdiction over the matter. It also distinguishes *Foster* on the ground that in *Foster*, the State sought reconsideration of the imposition of valid concurrent sentences, whereas in this case, the trial court's order sentencing defendant to probation was based on a legal mistake. On the State's motion, the defendant in *Foster* was resentenced to consecutive terms of imprisonment, which represented an increase to his original sentence. *Foster*, 309 Ill. App. 3d at 13-14. The State contends that here, unlike in *Foster*, defendant's original sentence was not increased by the court's order reconsidering its ruling on his motion to reconsider.

¶ 33    Section 5-4.5-50(d) of the Code provides, in pertinent part:

> "(d) MOTION TO REDUCE SENTENCE. A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 30 days after the sentence is imposed. A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed with the circuit court clerk within 30 days following the imposition of sentence. A motion not filed within that 30-day period is not timely. *The court may not increase a sentence once it is imposed.* A notice of motion must be filed with the motion. The notice of motion shall set the motion on the court's calendar on a date certain within a reasonable time after the date of filing." (Emphasis added.) 730 ILCS 5/5-4.5-50(d) (West 2014).

¶ 34    Illinois Supreme Court Rule 606(b) provides, in pertinent part:

> "When a timely posttrial or postsentencing motion directed against the judgment has been filed by counsel or by defendant, if not represented by counsel, any notice of appeal filed before the entry of the order disposing of all pending postjudgment motions shall have no effect and shall be stricken by the trial court." Ill. S. Ct. R. 606(b) (eff. Dec. 11, 2014).

¶ 35    We review *de novo* questions of statutory interpretation. *People v. Molnar*, 222 Ill. 2d 495, 519 (2006).

¶ 36    In *Castleberry*, 2015 IL 116916, the defendant was convicted of two counts of aggravated criminal sexual assault, based on separate acts of oral and vaginal contact with the victim. At sentencing, the State contended that the defendant was subject to a mandatory 15-year sentencing enhancement on each of the two counts because the defendant had been armed with a firearm. *Id.* ¶ 3. When added to the mandatory minimum term of 6 years' imprisonment for each offense, the State claimed, the defendant was subject to a mandatory minimum term of 21 years' imprisonment on each count. *Id.* The trial court disagreed about the application of the 15-year enhancement, however, and found that the legislature had intended for the enhancement to be applied only once. It sentenced the defendant to a 9-year term of imprisonment on each count and added the 15-year enhancement to only one count, for a total term of 33 years' imprisonment. *Id.* ¶ 4. Neither the defendant nor the State moved to reconsider the defendant's sentence.

¶ 37     One of the arguments that the defendant raised on appeal was that the mandatory 15-year sentencing enhancement was unconstitutional, which the appellate court rejected. However, the court then responded to the *State's* argument on appeal and agreed that the mandatory 15-year enhancement applied to both convictions. *Id.* ¶ 6. The court held that, because the sentence that lacked the enhancement did not conform to a statutory requirement, it was void. The court then remanded the matter to the trial court for resentencing. *Id.* The defendant filed a petition for leave to appeal to the supreme court, and it was allowed.

¶ 38     In reviewing the defendant's arguments, our supreme court abolished the "void sentence rule," which mandated that a sentence that did not conform to a statutory requirement was void. *Id.* ¶ 1 (citing *People v. Arna*, 168 Ill. 2d 107, 113 (1995)). The court held that, because a trial court's subject matter jurisdiction over criminal cases comes from the constitution, a trial court cannot lose jurisdiction over a criminal case through " 'the failure to satisfy a certain statutory requirement or prerequisite.' " *Id.* ¶ 15 (quoting *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 30). Instead, the court held that a judgment is void only if it was entered by a court lacking either subject matter jurisdiction or personal jurisdiction. *Id.* ¶¶ 11-12. Subject matter jurisdiction involves the court's power " ' "to hear and determine cases of the general class to which the proceeding in question belongs." ' " *Id.* ¶ 12 (quoting *In re M.W.*, 232 Ill. 2d 408, 415 (2009), quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002)). Personal jurisdiction involves the court's power " 'to bring a person into its adjudicative process.' " (Internal quotation marks omitted.) *Id.* (quoting *In re M.W.*, 232 Ill. 2d at 415).

¶ 39     Although the State agreed that the void sentence rule should be abolished, it argued that, even if the void sentence rule did not provide a basis for the appellate court's decision, there was nothing wrong with the appellate court's increasing the defendant's sentence at the request of the State. *Id.* ¶ 20. The court disagreed and noted that Illinois Supreme Court Rule 604(a) (eff. July 1, 2006) did not permit the State to appeal a sentencing order. *Castleberry*, 2015 IL 116916, ¶ 21. Further, because that rule did not allow the State to appeal a sentencing order, it followed that the State could not have cross-appealed in the appellate court either, which the supreme court held was essentially what the State was trying to do. *Id.* ¶¶ 22-23. The court also held that Illinois Supreme Court Rule 615(b) (eff. Jan. 1, 1967), granting the appellate court the authority to reverse, affirm, or modify the judgment or order from which the appeal was taken, did not grant it the plenary power to increase a sentence. *Castleberry*, 2015 IL 116916, ¶ 24. However, the court held that, where a sentence "is illegally low, the State may, in appropriate circumstances, seek relief from this court via the writ of *mandamus*." *Id.* ¶ 26. At that time, the court noted, the State had not sought a writ of *mandamus*. Accordingly, the supreme court reversed the appellate court's judgment that increased the defendant's sentence, and it affirmed the trial court's judgment. *Id.* ¶¶ 27, 31.[1]

¶ 40     We first dispose of defendant's claim that the State did not have the authority to even *file* a motion to reconsider the trial court's order vacating the sentence of imprisonment and resentencing him to a term of probation. At oral argument, defendant's counsel conceded that

_____

[1]The State subsequently sought a writ of *mandamus* to compel the trial court to impose the mandatory 15-year firearm enhancement on each of the defendant's two convictions of aggravated criminal sexual assault. Our supreme court awarded the writ. *People ex rel. Alvarez v. Gaughan*, 2016 IL 120110.

the trial court had the authority to entertain the State's motion. Accordingly, we turn to the issue of whether the trial court erred in granting the State's motion.

¶ 41    The trial court's order—granting the State's motion to reconsider its order sentencing defendant to 48 months' probation and resentencing him to 4 years' imprisonment—violated section 5-4.5-50(d) of the Code and was clearly in error. That section specifically provides that "*[t]he court may not increase a sentence once it is imposed.*" (Emphasis added.) 730 ILCS 5/5-4.5-50(d) (West 2014). However, that is exactly what the court did here.

¶ 42    Our supreme court has long held that "a harsher sentence imposed after a successful appeal or motion to reconsider is only proper if it is based on additional bad conduct performed by the defendant after the original sentencing." *People v. Moore*, 177 Ill. 2d 421, 433 (1997). A defendant should not have to run the risk that challenging a sentence might result in a longer sentence and should not be penalized for his efforts to seek relief from the sentence he received. *People v. McBride*, 395 Ill. App. 3d 204, 209 (2009). Foreign jurisdictions have come to similar conclusions. *Bryant v. State*, 29 So. 3d 928, 936-37 (Ala. Crim. App. 2009) (" '[o]nce a valid sentence has been entered, it cannot, in the absence of fraud or another compelling reason, be altered anytime thereafter so as to increase the severity of the sentence' " (quoting *Ex parte Tice*, 475 So. 2d 590, 591-92 (Ala. 1984))).

¶ 43    Here, the State never alleged that defendant engaged in additional bad conduct after he was originally sentenced. Instead, the trial court had jurisdiction to grant defendant's motion to reconsider his sentence of imprisonment, and it did so. Since the trial court still retained jurisdiction over this matter when the State filed its motion to reconsider, *i.e.*, 30 days had not passed since the trial court entered its order sentencing defendant to probation (Ill. S. Ct. R. 606(b) (eff. Dec. 11, 2014)), the trial court could entertain the State's motion.[2] Moreover, this court has made it clear that Rule 606(b) applies equally to both a defendant and the State. *Abdullah*, 2018 IL App (2d) 150840, ¶ 16.

¶ 44    Nevertheless, although the State believed that the trial court erred in lowering defendant's sentence upon reconsideration, based upon the time defendant spent in prison since he was originally sentenced, the trial court could not resentence defendant based upon that alleged error because the order of probation was not illegal. *Cf. id.* ¶ 17 (the State is entitled to move to correct a sentence that does not conform to the law). Instead, the probation sentence was lawful, and any "mistake" in the trial court's rationale when imposing it did not make the sentence itself unlawful.

¶ 45    We also disagree with the State's claim that *Foster* supports its position that the trial court had the authority to vacate defendant's sentence of probation and resentence him to a term of imprisonment.

¶ 46    In *Foster*, the defendant was found guilty of second degree murder, two counts of attempted first degree murder, and two counts of aggravated discharge of a firearm. The trial court originally sentenced him to a total of 18 years' imprisonment, with concurrent terms of 18, 17, 17, 10, and 10 years in prison, respectively. *Foster*, 309 Ill. App. 3d at 2. Those sentences were based on the State's argument that the offenses were not part of a single

---

[2]Even if defendant had filed a notice of appeal before the State filed its motion, as long as the State filed the motion within 30 days of the final order, defendant's notice of appeal would have been considered premature, and the trial court would still have had jurisdiction to hear the State's motion. Ill. S. Ct. R. 606(b) (eff. Dec. 11, 2014); *People v. Abdullah*, 2018 IL App (2d) 150840, ¶ 14.

course of conduct. However, the State urged the court to use its discretion to impose consecutive sentences. *Id.* at 5-6. The court rejected that argument and imposed concurrent sentences. *Id.* at 6. After the defendant filed his notice of appeal, the State filed a motion to reconsider the defendant's sentence. The court granted the motion, found the original sentence void, and resentenced the defendant to a total of 35 years' imprisonment, with an 18-year term for second degree murder to run consecutively to concurrent terms of 17, 17, 10, and 10 years, respectively, for the remaining convictions. *Id.* at 3, 6. In doing so, the court found that the offenses constituted a single course of conduct and were therefore subject to mandatory consecutive sentencing.

¶ 47    On appeal, the defendant argued that the trial court erred when it reconsidered his sentence and ordered consecutive sentences because the court had been divested of jurisdiction when the defendant filed his notice of appeal. The State argued that the issue of jurisdiction was irrelevant because the trial court had the authority to correct a void sentence at any time. *Id.* at 6. The *Foster* court described the issue on appeal in that case as whether, upon a motion by the State to reconsider a sentence, a trial court may reinstate its own jurisdiction to "correct" a sentence after a notice of appeal has been filed. *Id.* at 7. The court held that the State could not seek reconsideration of the defendant's sentence in the trial court after the defendant had already filed a notice of appeal, because that notice divested the trial court of jurisdiction and only the appellate court had the authority to review the sentence at that time. *Id.* at 8 (citing *People v. Bounds*, 182 Ill. 2d 1, 3 (1991)). The *Foster* court then said, "[t]he State could have obtained reconsideration of the sentence order by filing its motion before the notice of appeal was filed by the defendant." *Id.* However, since the trial court's order resentencing the defendant to consecutive sentences was made in the absence of jurisdiction, the *Foster* court held that it must be vacated. *Id.*

¶ 48    The court then determined that the original sentence was valid because it reflected the fact that the second degree murder and attempted murders were separate offenses, motivated by different criminal objectives, and were not committed as part of a single course of conduct. *Id.* at 10. With regard to the second sentencing hearing, the court held that the State attacked the concurrent sentences under a different version of the facts from the version it relied upon at the first sentencing hearing, which was improper. *Id.* at 12 (citing *People v. Summers*, 291 Ill. App. 3d 656 (1997)). After discussing *Summers*, the court held, "[m]oreover, the trial court could not increase the sentence once a valid sentence was imposed." *Id.* at 13. It found that the defendant's sentence was increased from 18 to 35 years' imprisonment when the terms were changed from concurrent to consecutive. Accordingly, it vacated the second, increased sentence and reinstated the original sentence. *Id.* at 14.

¶ 49    We agree with the State that *Foster* supports its proposition that the State may seek reconsideration of a sentencing order as long as the court retains jurisdiction over the matter. However, that does not mean that the State's motion for reconsideration will be granted, if it is requesting reconsideration of a sentence that was not unlawful but simply a product of the trial court's discretion.[3]

---

[3]We note that the *Foster* court incorrectly held that the trial court was divested of jurisdiction when the defendant filed a notice of appeal. *Id.* at 8. The plain language of Rule 606(b) clearly states, "[w]hen a timely posttrial or postsentencing motion directed against the judgment has been filed by counsel or by defendant, if not represented by counsel, any notice of appeal filed before the entry of the order

- 11 -

¶ 50    The State attempts to distinguish *Foster* on the ground that, in *Foster*, the State sought reconsideration of the imposition of valid concurrent sentences, whereas in this case the trial court's order sentencing defendant to probation was due to a "legal mistake." We are not persuaded. Again, although the trial court's reliance on defendant's time spent in prison might have been error, that alleged error did not make the sentence itself unlawful. Nothing in the Code provides that, if the trial court made an error in resentencing a defendant, the trial court may vacate the valid order that resentenced the defendant and then impose an increased sentence. See *State v. Lehrkamp*, 2017 MT 203, ¶ 11, 400 P.3d 697 (review of the legality of a sentence is confined to determining whether the sentencing court had statutory authority to impose the sentence).

¶ 51    The State also notes that here, unlike in *Foster*, defendant's original sentence was not increased by the court's order reconsidering its ruling on defendant's motion to reconsider. This argument has no merit. It is clear that the focus here is not on an increase to the *original* sentence but on an increase to the sentence of probation that defendant received upon reconsideration.

¶ 52    Finally, the State argues that, since the trial court still had personal and subject matter jurisdiction when it granted the State's motion to reconsider, it had the authority to correct its order resentencing defendant to a term of probation. Unlike in *Castleberry*, the State argues, the voidable sentence here was corrected by the trial court but was not increased upon resentencing. Therefore, as the trial court concluded, *Castleberry* is distinguishable and did not limit the court's inherent authority to correct its ruling.

¶ 53    Again, we are not persuaded. Although the trial court still had personal and subject matter jurisdiction when it granted the State's motion to reconsider and resentenced defendant to imprisonment, that does not mean that it had the power to ignore the Code's requirement that specifically states that a court may not increase a sentence once it has been imposed. 730 ILCS 5/5-4.5-50(d) (West 2014). Here, the trial court did not have "inherent authority" to correct its ruling, and when it did so, it impermissibly increased defendant's sentence.

¶ 54    Finally, at oral argument, we asked the State to respond to our supreme court's holding in *Moore* that "a harsher sentence imposed after a successful appeal or motion to reconsider is only proper if it is based on additional bad conduct performed by the defendant after the original sentencing." *Moore*, 177 Ill. 2d at 433. In response, the State referenced our supreme court's decision in *People v. Garcia*, 179 Ill. 2d 55 (1997), where the court referred to the "prophylactic rule" announced in *North Carolina v. Pearce*, 395 U.S. 711 (1969). That rule was "designed to protect a defendant on retrial from the potential vindictiveness of a resentencing judge." *Garcia*, 179 Ill. 2d at 74 (citing *Pearce*, 395 U.S. at 725). Twenty years later, in *Alabama v. Smith*, 490 U.S. 794 (1989), the United States Supreme Court held that the *Pearce* presumption of vindictiveness does not apply when a sentence imposed after trial is greater than that previously imposed after a guilty plea. *Id.* at 797-803.

¶ 55    In *Moore*, our supreme court found that the provisions of section 5-4.5-50(d) of the Code[4] (titled "Motion to Reduce Sentence") were consistent with and incorporated the reasoning in *Pearce*. *Moore*, 177 Ill. 2d at 432. Our supreme court has recently reiterated that same

disposing of all pending postjudgment motions shall have no effect and shall be stricken by the trial court." Ill. S. Ct. R. 606(b) (eff. Dec. 11, 2014).

[4]Section 5-4.5-50 was then section 5-8-1(c) of the Code. See 730 ILCS 5/5-8-1(c) (West 1996).

finding. See *Alvarez*, 2016 IL 120110, ¶ 19. Therefore, we fail to see how *Garcia* aids the State here. Since the increased sentence that defendant received after the trial court granted the State's motion to reconsider his sentence of probation was not based upon bad conduct that occurred after he was originally sentenced, the trial court did not have the authority to resentence defendant to four years' imprisonment.

¶ 56                                        III. CONCLUSION

¶ 57        In sum, the State had the authority to file a motion to reconsider the trial court's order here. However, the trial court erred in granting the State's motion, because the order of probation was not an illegal sentence, even if the court believed that its rationale was flawed when it entered that sentence. When the trial court vacated the sentence of probation and resentenced defendant to a four-year term of imprisonment, it impermissibly increased defendant's sentence, in violation of section 5-4.5-50(d) of the Code (730 ILCS 5/5-4.5-50(d) (West 2014)). Having so held, we need not address defendant's remaining contention that the trial court abused its discretion in originally sentencing him to four years' imprisonment.

¶ 58        The judgment of the circuit court of Boone County resentencing defendant to four years' imprisonment is vacated, and the trial court's order sentencing defendant to 48 months' probation is reinstated. Upon remand the trial court shall order defendant to report to the appropriate probation authority to begin serving his sentence of probation, less credit for time served.

¶ 59        Imprisonment order vacated, and probation order reinstated.

¶ 60        Cause remanded with directions.