2022 IL App (2d) 200055
No. 2-20-0055
Opinion filed February 9, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of McHenry County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-1002 |
| MICHAEL E. SMITH, | ) ) ) | Honorable Sharon L. Prather and Michael E. Coppedge, |
| Defendant-Appellant. | ) | Judges, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court, with opinion.
Justices McLaren and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant, Michael E. Smith, pleaded guilty to three counts of aggravated driving under the influence of alcohol (DUI) and one count of driving with a revoked license. The trial judge initially assigned to the matter imposed consecutive six-year prison terms on two of the aggravated DUI counts. Later the judge determined that the multiple convictions violated the one-act, one-crime rule. Accordingly, the judge ordered defendant resentenced, and a successor judge imposed a nine-year prison term on one of the aggravated DUI counts. Defendant appeals, arguing that it was error to increase the sentence from six to nine years. We vacate the nine-year sentence and remand for reinstatement of the six-year sentence.

¶ 2                                    I. BACKGROUND

¶ 3     The State charged defendant with four counts of aggravated DUI (625 ILCS 5/11-501(a)(2), (d)(1)(A), (d)(1)(C), (d)(1)(I) (West 2014)) (counts I through IV) and one count of driving with a revoked license (*id.* § 6-303(a)) (count V). The charges arose from a November 2, 2014, traffic accident where a vehicle driven by defendant struck a vehicle driven by Jose Martin with passengers Jarrett Wolff, Anthony Kowalski, and Dan Tysland. The State based its four aggravated DUI counts on allegations that (1) defendant had at least three prior DUI convictions (count I), (2) the accident resulted in great bodily harm to Wolff (count II), (3) the accident resulted in great bodily harm to Kowalski (count III), and (4) defendant committed DUI when he knew or should have known that the vehicle he was driving was not covered by a liability insurance policy (count IV).

¶ 4     The case was initially assigned to Judge Sharon L. Prather. On December 4, 2017, defendant entered a nonnegotiated plea of guilty to counts I, II, III, and V. As part of the factual basis for the plea, the parties stipulated that the evidence would show that defendant was driving with a blood-alcohol level of 0.225 when the accident occurred. The court continued the matter for sentencing.

¶ 5     The presentence investigation report (PSI) indicated that Wolff was in the front passenger seat when the accident occurred, and Kowalski was in the right rear passenger seat. The accident left Wolff in critical condition with a hip fracture, facial fractures, a bruised lung, and a bleed on the left side of his brain. He was placed on a ventilator. Kowalski suffered cuts to the face.

¶ 6     The PSI indicated that, in 2005, defendant was convicted of driving with a suspended license and sentenced to supervision. In 2007, he was convicted of DUI and sentenced to supervision. In 2011, he was again convicted of DUI and sentenced to conditional discharge. That

same year, he was convicted of an offense in Wisconsin equivalent to DUI. In 2014, prior to the incident here, defendant was convicted of driving with a revoked license and was sentenced to conditional discharge.

¶ 7    Defendant was sentenced in this case on February 9, 2018. Martin testified about the accident. His vehicle was proceeding north on River Road in McHenry. Defendant's vehicle was proceeding south and was swerving in and out of its lane. The vehicle crossed into Martin's lane. Martin tried to avoid defendant's vehicle by driving around it to the left. Defendant's vehicle struck the right side of Martin's. After the collision, Wolff appeared "lifeless." His head was facing down, he was bleeding from his mouth and nose, and he showed "[n]o reaction." However, Martin felt Wolff's chest and detected a heartbeat. Martin yelled at defendant, but defendant claimed that the accident was Martin's fault.

¶ 8    Kowalski testified that, when the vehicles collided, he lost consciousness for "about a good two seconds." He suffered facial cuts. He was bleeding and in pain. Kowalski opened his door with Martin's help. After getting out of the vehicle, Kowalski called 911. Kowalski's wounds were bandaged at the scene by medical personnel. He was taken to the hospital, where he received about 163 stitches. He has a resulting scar above his right eye.

¶ 9    Wolff testified that he was in the hospital for 52 days, including three weeks in a coma.[1] He suffered long-term traumatic brain injury effects, including aphasia and problems with short-term memory. The accident prevented Wolff from joining the Marine Corps, his dream. Wolff and several family members presented victim impact statements. Several defense witnesses read letters

---

[1]It appears from the record that the coma was medically induced.

noting that defendant had a loving relationship with his family, was a loyal and selfless friend, had a strong work ethic, sought help for his alcohol problem, and was remorseful about the accident.

¶ 10   Judge Prather found that count I merged with counts II and III. She sentenced defendant to a six-year prison term on count II, a six-year prison term on count III, and a 180-day jail term on count V. She ordered consecutive sentences on counts II and III to be served concurrently with the sentence on count V. In imposing sentence, Judge Prather noted that defendant was a danger to society. On February 15, 2018, the prosecutor remarked in open court that there might be an "issue" with the mittimus. Judge Prather stayed the mittimus. On February 21, 2018, she vacated the sentencing order. It is undisputed that she did so because multiple convictions for aggravated DUI arising from a single motor vehicle accident violate the one-act, one-crime rule, regardless of the number of individuals who suffered great bodily harm in the accident. See *People v. Lavallier*, 187 Ill. 2d 464, 470-71 (1999).

¶ 11   Defendant filed a written "objection" to the order vacating his sentences. Defendant argued that the proper remedy for a one-act, one-crime violation was to "determine if there exists a lesser or greater included offense and impose a single sentence for the more serious crime." Thus, the court should "impose the lawfully imposed sentence of six years on one of the [DUI] counts and merge the other count into it recognizing that [defendant] committed a single act that resulted in two injuries." At the hearing on the objection, Judge Prather stated that "[t]he proper remedy is re sentencing [*sic*]." The following exchange occurred:

> "MR. STONE [DEFENSE COUNSEL]: We'd ask you to re sentence [*sic*] the Defendant to the sentence you believed was appropriate at the time, six years as to Count II and six years as to Count III. You could have sentenced him to 12 years on Count II. You could have sentenced him to 8 years on Count III. You chose not to. You decided after

hearing arguments in mitigation and aggravation that the appropriate sentence was six years. We respect that.

> THE COURT: The Court decided that the appropriate was [*sic*] 12 years.

> MR. STONE: Respectfully, if you had, you would have sentenced him to 12 years.

> THE COURT: I did. Six and six consecutive is twelve, Mr. Stone.

> MR. STONE: That's not the way Illinois Appellate Courts look at sentencing. Illinois Courts look at sentencing not as aggregate sentences or even as good time sentences, but as—

> THE COURT: When they're consecutive, the Court does look at them as aggregate sentences."

¶ 12    Judge Prather ordered a new sentencing hearing. Before the hearing, she held two conferences under Illinois Supreme Court Rule 402(d) (eff. July 1, 2012). At the first conference, Judge Prather indicated that she would resentence defendant to a prison term that would probably exceed 6 years but not 12 years. At the second conference, Judge Prather recommended a sentence of eight years. Judge Prather retired before the new sentencing hearing, and Judge Michael E. Coppedge was assigned. Defendant filed a motion to "re-visit" his prior objection to the order vacating the original sentences. Judge Coppedge denied the motion, ruling that it was permissible to impose a sentence that did not exceed the 12-year aggregate sentence that Judge Prather imposed.

¶ 13    At the new sentencing hearing, the evidence in aggravation and mitigation was similar to that presented at the original hearing. As additional evidence in mitigation, defendant submitted a written psychosocial assessment prepared by Phyllis Gould, a licensed clinical social worker. Gould concluded that there were many indications that defendant's prospects for rehabilitation

were favorable. She noted, *inter alia*, that he had a strong family support system, did not use illicit drugs, functioned well at work before being incarcerated, was addressing his drinking problem, and was remorseful. Gould also noted that defendant was a college graduate and had been described as a model prisoner.

¶ 14     Judge Coppedge found that counts I and III merged into count II, and sentenced defendant to a nine-year prison term on count II. Defendant unsuccessfully moved to withdraw his plea, and this appeal followed.

¶ 15     We entered an order retaining jurisdiction and remanding the case to the trial court for further proceedings on defendant's postplea motion. We did so because defense counsel's certificate under Illinois Supreme Court Rule 604(d) (eff. July 1, 2017) did not conform to the requirements of that rule. In addition, we ordered a supplement to the record upon completion of the proceedings on remand. The court has completed the remand proceedings and has supplemented the record per our order. Accordingly, we now consider the merits of defendant's appeal.

¶ 16                              II. ANALYSIS

¶ 17     Defendant argues that Judge Coppedge's imposition of a nine-year prison term on count II was an unlawful sentencing increase, notwithstanding that the new sentence was less than the aggregate of the two six-year sentences that Judge Prather imposed on counts II and III.

¶ 18     According to defendant, Judge Prather, having erred by entering judgment on two aggravated DUI convictions and imposing consecutive sentences in violation of the one-act, one-crime rule,[2] then compounded the error by vacating both sentences and ordering a new sentencing

_____

[2]In his opening brief, defendant argues that Judge Prather should not have entered

hearing. Defendant claims that the correct remedy would have been to vacate one of the convictions or amend the mittimus to make the sentences concurrent rather than consecutive.[3] Defendant maintains that we should view the new sentence of 9 years as an increase from 6 years rather than a decrease from 12 years. According to defendant, the increase violated principles expressed in *North Carolina v. Pearce*, 395 U.S. 711 (1969), and embodied in section 5-4.5-50(d) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-50(d) (West 2018)). See *People v. Amans*, 2018 IL App (2d) 170405, ¶ 55 (section 5-4.5-50(d) is "consistent with and incorporate[s] the reasoning in" *Pearce*). *Pearce* held that, to guard against retaliation for a defendant's seeking a new trial, the court may not increase the defendant's sentence after retrial unless the increase is "based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." *Pearce*, 395 U.S. at 726. The

_____

convictions, much less sentences, on counts II and III because they merged under the one-act, one-crime rule. This was a correct assessment of Judge Prather's error, but, curiously, defendant portrays her error differently in his reply brief. He asserts that Judge Prather had discretion to enter concurrent sentences on counts II and III and that she violated the one-act, one-crime rule by imposing consecutive sentences. He says: "Because of the principle of 'one act/one crime, [defendant's] single act of driving while intoxicated required vacating the consecutive nature of her sentence." Thus, defendant frames the one-act, one-crime error as a sentencing error and does not reassert that the rule did not even allow convictions to be entered on both counts II and III.

[3]Of course, making the sentences concurrent, rather than consecutive, would not remedy the one-act, one-crime issue of entering convictions on multiple aggravated DUI offenses arising from the same act.

concern in *Pearce* was that the threat of a sentencing increase might dissuade defendants from seeking review of their convictions. Section 5-4.5-50(d) of the Code provides, in pertinent part, "A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 30 days after the sentence is imposed. \*\*\* *The court may not increase a sentence once it is imposed.*" (Emphasis added.) 730 ILCS 5/5-4.5-50(d) (West 2018). As explained below, we conclude that defendant's nine-year sentence was an impermissible sentencing increase.

¶ 19    Before proceeding, we note that, under *Lavallier*, Judge Prather could enter a conviction on only one count of aggravated DUI arising out of the November 2, 2014, accident. Judge Prather recognized that she erred under the one-act, one-crime rule in entering convictions on counts II and III. Judge Coppedge also realized the implications of the one-act, one-crime rule, correctly determining that all aggravated DUI counts merged into a single count, count II. However, in resentencing defendant on count II, Judge Coppedge incorrectly assessed the implications of Judge Prather's sentence. For purposes of resentencing defendant on count II, the original sentence was the 6 years of imprisonment imposed on that individual count, not the 12-year aggregate length of the consecutive sentences on counts II and III. It is well established that "consecutive sentences constitute separate sentences for each crime of which a defendant has been convicted." *People v. Carney*, 196 Ill. 2d 518, 529 (2001). The *Carney* court explained: "Our jurisprudence \*\*\* makes it clear that consecutive sentences do not constitute a single sentence and cannot be combined as though they were one sentence for one offense. Each conviction results in a discrete sentence that must be treated individually." *Id.* at 530.

¶ 20    In *People v. Kilpatrick*, 167 Ill. 2d 439 (1995), our supreme court applied that principle in conjunction with what was then section 5-8-1(c) of the Code (730 ILCS 5/5-8-1(c) (West 1992))— in pertinent part, "A motion to reduce a sentence may be made, or the court may reduce a sentence

without motion, within 30 days after the sentence is imposed. However, the court may not increase a sentence once it is imposed." In *Kilpatrick*, the defendant originally received consecutive sentences of six and nine years for two separate offenses. The defendant moved to reconsider. The trial court vacated the consecutive sentences and entered a single sentence of 15 years' for both offenses. *Kilpatrick*, 167 Ill. 2d at 441. The supreme court held that the trial court, in effect, increased the defendant's sentences for the two offenses, in violation of section 5-8-1(c). *Id.* at 446-47.

¶ 21    Section 5-4.5-50(d) of the Code is similar to the operative statute in *Kilpatrick*. As noted above, it provides, in pertinent part, "A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 30 days after the sentence is imposed. *** *The court may not increase a sentence once it is imposed.*" (Emphasis added.) 730 ILCS 5/5-4.5-50(d) (West 2018). Judge Prather and Judge Coppedge believed that because Judge Prather imposed an aggregate sentence of 12 years for counts II and III, a new sentence of up to 12 years on count II would not be an increased sentence. Pursuant to *Kilpatrick*, that view is incorrect. The State similarly argues that "the re-sentencing order did not represent an impermissible increase in contravention of section 5-4.5-50(d), where the sentence was less than the aggregate 12-year term of imprisonment originally imposed and reflected the court's intention that defendant serve more than a six-year term of imprisonment." That view is directly contrary to *Kilpatrick*, and it is telling that the only authorities cited in support of the argument are the *dissents* in *Kilpatrick*. See *Kilpatrick*, 167 Ill. 2d at 448 (Bilandic, C.J., dissenting, joined by Heiple, J.); *id.* at 448-49 (Heiple, J., dissenting, joined by Bilandic, C.J.). Both dissents expressed that a sentence equal to the

aggregate length of the consecutive sentences was not an increased sentence. We are obligated to follow our supreme court's majority decision in *Kilpatrick*.[4]

¶ 22 The State further argues that because section 5-4.5-50(d) is consistent with and incorporates the reasoning of *Pearce*, our focus should be on whether the increased sentence was the product of vindictiveness. The State argues that there is no reasonable likelihood that Judge Prather acted out of vindictiveness when she, *sua sponte*, vacated the original sentences because of the one-act, one-crime violation. The State further argues that the record does not show any vindictiveness on Judge Coppedge's part in imposing a nine-year prison term. The argument is unpersuasive. Section 5-4.5-50(d) unequivocally states that, "The court may not increase a sentence once it is imposed." 730 ILCS 5/5-4.5-50(d) (West 2018). It is well established that "where the language of a statute is clear, this court is not free to read into it exceptions that our legislature did not express and must give it effect as written." *Municipal Trust & Savings Bank v. Moriarty*, 2021 IL 126290, ¶ 23. Moreover, the absence of vindictiveness does not distinguish this case from *Kilpatrick.* There, the court likewise found no trial court vindictiveness in increasing the

---

[4]There may be some virtue to the dissents' approach, which would effectuate the sentencing judge's original intention as to the proper duration of a defendant's incarceration. Here, Judge Prather believed that defendant posed a danger to the public and that he should serve 12 years in prison. However, the question implicates policy concerns that are for the General Assembly, not the courts. "To maintain the separation of the legislative and judicial branches, courts should avoid implementing their own notions of optimal public policy and effectively becoming a legislature." (Internal quotation marks omitted.) *Fox Fire Tavern, LLC v. Pritzker*, 2020 IL App (2d) 200623, ¶ 25.

defendant's sentence. The *Kilpatrick* court stated, "Although we do not believe that the circuit court in the instant cause was motivated by any ill-will against the defendant, it is necessary to construe section 5-8-1(c) according to its plain terms and in a fashion that reasonably protects a defendant's legitimate interest in unbiased sentencing." *Kilpatrick*, 167 Ill. 2d at 447.

¶ 23                                    III. CONCLUSION

¶ 24     For the reasons stated, we vacate defendant's nine-year sentence on count II and remand to the circuit court of McHenry County with directions to reinstate defendant's six-year sentence on count II.

¶ 25     Sentence vacated. Cause remanded with directions.

**No. 2-20-0055**

| | |
|---|---|
| **Cite as:** | *People v. Smith*, 2022 IL App (2d) 200055 |
| **Decision Under Review:** | Appeal from the Circuit Court of McHenry County, No. 14-CF-1002; the Hon. Sharon L. Prather and the Hon. Michael E. Coppedge, Judges, presiding. |
| **Attorneys for Appellant:** | Jed Stone, of Stone & Associates, Ltd., of Waukegan, for appellant. |
| **Attorneys for Appellee:** | Patrick D. Kenneally, State's Attorney, of Woodstock (Patrick Delfino, Edward R. Psenicka, and Barry W. Jacobs, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |